Scott W. Hyder, AZ Bar No. 017282
**LAW OFFICE OF SCOTT W. HYDER, PLC**
3420 East Shea Blvd., Ste. 200
Phoenix, Arizona  85028
Phone:  (602) 923-7370
Fax:  (602) 795-6010
E-mail:  shyder@scotthyderlaw.com
Attorney for Defendants

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREYSTONE HOUSING FOUNDATION, INC., a California Non-Profit 501(c)(3) Corporation, <br><br> Plaintiff <br><br> v. <br><br> FANTASY HOLDINGS, LLC, an Arizona limited liability company; NARONGYOS SANTADSIN, an individual, <br><br> Defendants | Case No. 3:16-cv-00300-AJB-DHB <br><br> Assigned to:  Hon. Anthony J. Battaglia <br><br> **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR SECOND MOTION TO DISMISS FOR:** <br><br>   **(A)  LACK OF PERSONAL JURISDICTION;** <br><br>   **(B)  IMPROPER VENUE; AND** <br><br>   **(C)  INSUFFICIENT SERVICE OF PROCESS** <br><br> **AND** <br><br> **ALTERNATIVE MOTION TO TRANSFER VENUE** <br><br> **Hearing Date:  March 9, 2017 at 2:00 p.m. in Courtroom 3B – 3rd Floor** <br><br> Complaint Filed:  February 5, 2016 |

# **Table of Contents**

I.   STATEMENT OF RELEVANT FACTS ..................................................1

II.  LEGAL ARGUMENT ..........................................................................4

  A.  The Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(2) because this Court does not have general jurisdiction over Defendants.......................4

  B.  The Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(2) because this Court does not have specific jurisdiction over Defendants. .....................5

    1.   Prior negotiations and course of parties' dealings. ...........................6

    2.   Terms of the Contract. .....................................................9

    3.   Contemplated future consequences.................................10

  C.  Even if the Court finds that this Court has personal jurisdiction over Defendants, the exercise of personal jurisdiction is not reasonable.................................................11

  D.  Assuming that this Court finds there is personal jurisdiction over Defendants, this case should be dismissed under Fed. R. Civ. P. 12(b)(3) for improper venue. ...........13

    1.   Venue in California is improper under 28 U.S.C. § 1391(b)(1) because, at the very minimum, Santadsin does not reside in California..........................................14

    2.   Venue is also not proper under 28 U.S.C. § 1391(b)(2) because no substantial part of the events or omissions occurred in California. ...........................................15

    3.   Venue is also not proper in California under 28 U.S.C. § 1391(b)(3) because Arizona is another jurisdiction that this case can easily be brought........................15

  E.  Even if venue and personal jurisdiction are proper, this case should be transferred to the District of Arizona pursuant to 28 U.S.C. § 1404(a) under principles of forum non-conveniens.................................................................................16

  F.  Pursuant to Fed. R. Civ. P. 12(b)(5), this case should be dismissed because Santadsin was never served by a process server. .........................................18

III. CONCLUSION ....................................................................................19

i

1
2

## TABLE OF CASES AND AUTHORITIES

3
4

*15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3854* (4th ed. 2016) ................................................................. 17

5

*Atwal v. Myer*, 841 F. Supp. 2d 364, 367 (D.D.C. 2012) .................................... 9

6

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000) ..... 11

7

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) ...... 4

8

*Bolden v. City of Topeka*, 441 F.3d 1129, 1148 (10th Cir. 2006) ........................ 18

9

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S. Ct. 2174, 2185, 85 L.Ed.2d 528 (1985) ......................................................................................... 6

10

*Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) ................ 10

11

*Carr v. International Game* Technology, 770 F. Supp. 2d 1080, 1100 (D. Nev. 2011) . 18

12

*Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ............................... 17

13

*Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993) ............. 11

14

*Cummings v. Western Trial Lawyers* Ass'n, 133 F. Supp. 2d 1144, 1149 (D. Ariz. 2001) ................................................................................................... 13

15

*Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) ........................................ 4

16
17

*Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390–91 (8th Cir. 1991) ................................................................................................... 10

18

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir.1986) ......... 13

19

*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) ................... 10

20

*Gardner Engineering Corp. v. Page Engineering Co.*, 484 F.2d 27, 33 (8th Cir. 1973). 13

21

*Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992) ..................................................................................... 16

22

*Hawkins v. Gerber Product Co.*, 924 F. Supp. 2d 1208, 1212 (S.D. Cal. 2013) ........... 16

23

*Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996) .. 13

24

*J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880–81 (2011) ...................... 4

25

*McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 816 (9th Cir. 1988) .................. 7, 9

26

*Myers v. Bennett Law Offices*, 238 F.3d 1068, 1072 (9th Cir. 2001) ..................... 5

27

*Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001) ............................. 15

*Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) ................................. 7

*Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) ............................ 11

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) .............. 6

*Scullin Steel Co. v. National Ry. Utilization Corp.*, 676 F.2d 309, 314 (8th Cir. 1982) .... 9

*Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) ...................................... 9

*Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) .......... 16

*Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 594–95 (8th Cir. 2011) ......................................................................................... 10

*Viracon, Inc. v. J & L Curtain Wall LLC*, 929 F. Supp. 2d 878, 886 (D. Minn. 2013) .. 10

*Vu v. Ortho–McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1155–56 (N.D. Cal. 2009) ... 16

iii

Defendants FANTASY HOLDINGS, LLC, an Arizona limited liability company ("**Fantasy Holdings**"), and NARONGYOS SANTADSIN, an individual ("**Santadsin**") respectfully submit this Memorandum in support of their Second Motion to Dismiss pursuant to *Fed. R. Civ. P. 12(b)(2), 12(b)(3)* and *12(b)(5)* for:  (a) lack of personal jurisdiction; (b) improper venue; and (c) insufficient service of process.  Alternatively, Defendants respectfully request for the Court to transfer the case to the United States District Court for the District of Arizona under *28 U.S.C. § 1406(a)* (cure defective venue) or *28 U.S.C. § 1404(a)* (*forum non-conveniens*).

On March 10, 2016, Defendants previously filed its original Motion to Dismiss for Improper Venue and Lack of Personal Jurisdiction and Alternative Motion to Transfer Venue [DE #5] (the "**Original Motion to Dismiss**").  On May 20, 2016, this Court specifically found that it had no personal jurisdiction over any Defendant, and dismissed the case [DE #15] (the "**Original Dismissal Order**").  Plaintiff has now filed an Amended Complaint in the exact same court naming the exact same Defendants to re-litigate the merits of personal jurisdiction and proper venue.

## I.    STATEMENT OF RELEVANT FACTS

Plaintiff Greystone Housing Foundation is a non-profit corporation formed in the State of California.  *See Amended Complaint* at ¶ 1.  Fantasy Holdings is a limited liability company formed in Arizona with its only place of business in Phoenix, Arizona.  *See Amended Complaint* at ¶ 2; *Declaration of Narongyos Santadsin*, a copy of which is attached hereto as Exhibit "1" (the "**Santadsin Declaration**"), at ¶ 4.  Santadsin is an individual member and manager of Fantasy Holdings and is domiciled in the City of Phoenix, State of Arizona.  *See Amended Complaint* at ¶ 3; *Santadsin Declaration* at ¶¶ 2 – 3.

On or about July 30, 2009, Santadsin signed a promissory note in Phoenix, Arizona on behalf of Fantasy Holdings (as its manager), a copy of which is attached as an exhibit

1

to the Amended Complaint (the "**Note**").  The Note involves a $500,000 payment made to Fantasy Holdings. *Santadsin Declaration* at ¶ 6.  The terms and conditions of this Note were negotiated in the State of Arizona between Santadsin, Taylor Coleman, who is Santadsin's domestic partner and closely works with and assists Santadsin with the day-to-day operations of his businesses, and Kent and Jade Casady. *Santadsin Declaration* at ¶ 11; *Declaration of Taylor Coleman*, a copy of which is attached hereto as <u>Exhibit "2"</u> (the "**Coleman Declaration**), at ¶¶ 3, 9.

Although Plaintiff is shown as the promisee on the Note, it never has had any contacts or other relationship whatsoever to Defendants in connection with this transaction or otherwise. *Santadsin Declaration* at ¶ 10; *Coleman Declaration* at ¶ 8. The parties who funded the Note proceeds are Mr. and Mrs. Casady.   *Santadsin Declaration* at ¶ 7; *Coleman Declaration* at ¶ 5.

Mr. Casady was a former friend of Mr. Coleman and first contacted him back in 2008 to inquire about purchasing real estate that Mr. Coleman's former company owned and which was in bankruptcy at the time. *Coleman Declaration* at ¶ 7.  As part of that friendship, Mr. Casady learned and inquired about the businesses Mr. Coleman and Santadsin were engaged in. *Id.*  In fact, Mr. Casady expressed to Mr. Coleman a desire to recruit third-party investors Mr. Casady knew to invest monies in such businesses. *Id.* During 2008 and 2009, Mr. Casady also provided legal advice and services to Santadsin and Fantasy Holdings, including the formation and structure of Fantasy Holdings and devising a joint venture agreement for Fantasy Holdings involving himself, Santadsin, Ms. Casady and Mr. Coleman. *Id; Santadsin Declaration* at ¶ 9.  Mr. Casady also provided legal representation to Mr. Coleman to prevent Mr. Coleman's former residence from being repossessed via foreclosure, which proved to be unsuccessful. *Coleman Declaration* at ¶ 7.

In lieu of Mr. and Mrs. Casady directly funding the loan themselves to Fantasy Holdings, they insisted that they donate shares of personal stock to Plaintiff. *Santadsin*

2

*Declaration* at ¶ 7; *Coleman Declaration* at ¶ 5.  Mr. and Mrs. Casady directed Plaintiff to: (a) sell the donated shares for approximately $554,000; (b) return $49,000 to Mr. Casady; and (c) lend $500,000 directly to Fantasy Holdings.  *Id.*  Defendants had absolutely nothing to do with this structure, and it was solely Mr. Casady's idea.  *Id.*  In a nutshell, Mr. and Mrs. Casady insisted on using Plaintiff as a "funneling company" at the last minute to fund their own loan proceeds to Fantasy Holdings to obtain some type of tax savings or advantage.

Nothing in the Note mandates any venue or jurisdiction in California or even suggests which state's law applies.   Although the Note does include California addresses to send payment to, nothing in the Note identifies the Plaintiff as a California corporation or resident.  There were no discussions between Defendants and any other individuals that any dispute regarding the Note would be subject to California law or a California court. *Santadsin Declaration* at ¶¶ 15 – 16, *Coleman Declaration* at ¶¶ 14 – 15. Defendants neither conduct any business in California nor reside in California. *Santadsin Declaration* at ¶¶ 2, 5; *Coleman Declaration* at ¶ 11.  Neither Defendants nor anyone acting on behalf of either Defendant had any contact with any of Plaintiff's employees, agents, officers or directors prior to the execution of the Note. *Santadsin Declaration* at ¶ 12; *Coleman Declaration* at ¶ 8.  All of the terms and conditions set forth in the Note were negotiated in Arizona, via telephone and via electronic mail between Defendants, Mr. Coleman and Mr. and Mrs. Casady.  *See Santadsin Declaration* at ¶¶ 10 – 11; *Coleman Declaration* at ¶¶ 8 – 9.  In fact, Defendants have never even made a payment to Plaintiff, as all payments before the Note's maturity date were paid directly to Mr. Casady.  *See Note*; *Santadsin Declaration* at ¶ 14; *Coleman Declaration* at ¶ 13.

3

## II.    LEGAL ARGUMENT

### A. The Amended Complaint should be dismissed under *Fed. R. Civ. P. 12(b)(2)* because this Court does not have general jurisdiction over Defendants.

General jurisdiction allows a court to decide cases unrelated to the forum state if the defendant's contacts are "substantial enough to approximate physical presence in the forum state." See *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). For a court to have general jurisdiction over an individual, such individual must either be (a) served with process while he or she is in the forum, (b) domiciled in the forum, or (c) consent to the court's jurisdiction. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880–81 (2011). For a court to have general jurisdiction over an entity, the place of an entity's formation and principal place of business are usually the basis for general jurisdiction. *Daimler AG v. Bauman*, 134 S. Ct. 746, 760, 187 L.Ed.2d 624 (2014). Outside of these rules, only "in an exceptional case" should a court find a corporation's operations in the forum to be "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n.19.

In this case, there is no general jurisdiction in California with respect to either Defendant. Santadsin is an individual domiciled in Arizona and has no place of residence in California. *Santadsin Declaration* at ¶ 2. Santadsin was never served the original complaint, the Amended Complaint, or any other pleading in California. *Santadsin Declaration* at ¶ 17. Santadsin has never consented to jurisdiction in California. *Santadsin Declaration* at ¶ 15. Likewise, Fantasy Holdings is formed in Arizona, not California. *Santadsin Declaration* at ¶ 4; *Amended Complaint* at ¶ 2.

As such, to establish that California has general jurisdiction over both Defendants, Plaintiff is required to show that Defendants' operations in California are "so substantial and of such a nature as to render the corporation at home in that State." Plaintiff failed to do that in connection with the Original Motion to Dismiss.

4

As part of Plaintiff's attempt to re-litigate and get another "bite at the apple" on this issue, Plaintiff now includes unfounded allegations in paragraph 9 of the Amended Complaint:

> (i) defendants solicited and engaged in commercial activities creating a latticework of contacts in and with the State of California with California residents in various of its counties, including San Diego County; (ii) Arizona defendants have purposefully directed their activities to California . . . ."

Defendants have no connection with the State of California other than the fact Greystone is the promisee listed on the Note and is a California non-profit (although this is not indicated on the Note) with a Lakeside, California mailing address. Neither Santadsin nor Fantasy Holdings operate or do any business in California. *Santadsin Declaration* at ¶ 5; *Coleman Declaration* at ¶ 11. There simply is no general personal jurisdiction in California with respect to either Defendant.

**B.  The Amended Complaint should be dismissed under *Fed. R. Civ. P. 12(b)(2)* because this Court does not have specific jurisdiction over Defendants.**

Likewise, California has no specific jurisdiction over either Defendant. Specific jurisdiction exists when a defendant has sufficient contacts with the forum state with respect to the specific underlying controversy. In the Ninth Circuit, specific jurisdiction exists in breach of contract actions only if: (1) the out-of-state defendant purposefully availed itself[1] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws; (2) the cause of action arose out of the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1072 (9th Cir. 2001). It is the plaintiff, not

---

[1] In determining the first prong for suits involving ***intentional torts***, courts usually apply the concept of whether the Defendant engaged in conduct that constitutes "purposeful direction". Because this case involves causes of action based on breach of contract, only analysis of the "purposeful availment" test is relevant.

5

the defendant, that bears the burden of proof to satisfying prongs (1) and (2). *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

To show that an out-of-state defendant purposefully availed itself of the privilege of conducting activities in the forum state for a breach of contract claim, a court must look at four (4) factors: (a) prior negotiations; (b) contemplated future consequences; (c) the terms of the contract;  and (d) the parties' actual course of dealing. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S. Ct. 2174, 2185, 85 L.Ed.2d 528 (1985).  A party to a lawsuit does not purposefully avail itself of a forum by merely entering into a contract with a forum resident. *Id.* at 478, 2185.

1.  <u>Prior negotiations and course of parties' dealings.</u>

Paragraph 9 of the Amended Complaint further states as follows:

(iii) defendants' premeditated and purposeful solicitation of loan funds from a California resident and the execution of the Promissory Note understandably gave rise to ongoing obligations that connected and intertwined these Arizona defendants with the forum state; (iv) substantially all of the events giving rise to plaintiff GREYSTONE's claims under the Promissory Note were the result of the defendants' intentionally targeted solicitations to California residents in the origination and ultimate funding of the loan, resulting from defendants' purposeful availment and contact with plaintiff GREYSTONE, its officers, consultants and agents in the County of San Diego, State of California to secure and obtain the loan …. (v) defendants' various activities, including their active solicitation of the "life blood" funding of their company from California-based lender GREYSTONE, have created a "substantial connection" to the State of California

Defendants never had any prior negotiations, course of dealings or otherwise communicated with Plaintiff or any its agents at any time whatsoever prior to the Note being entered.  *Santadsin Declaration* at ¶ 10; *Coleman Declaration* at ¶ 8.  It is true that Defendants engaged in negotiations and dealings with Mr. and Mrs. Casady, ***who are not parties to this lawsuit***.  ***However, all negotiations between Mr. and Mrs. Casady, Defendants, and Mr. Coleman occurred either in person in Phoenix, Arizona or via telephone or electronic mail communications with each other***.  *Santadsin Declaration*

at ¶¶ 10 – 11; *Coleman Declaration* at ¶ 8 – 9; s*ee Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) (concluding that the use of mail, telephone or other types of communications do not constitute evidence that a defendant purposely availed itself to the privilege of conducting activities in the forum state).  Santadsin also executed the Note in Arizona, not California. *Santadsin Declaration* at ¶ 12; *Coleman Declaration* at ¶ 10; *See McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 816 (9th Cir. 1988) (finding that no jurisdiction over the defendant, even though the contract was signed in the forum state, but was *negotiated* somewhere else and executed via mail).  At no time did Santadsin, Mr. Coleman or any other party representing Defendants travel to California for the purpose of signing the Note, or negotiating any term of this transaction. *Id.*

In fact, as Mr. Casady claims in his own Declaration filed in support of Plaintiff's Motion for Relief Setting Aside Court's Order Dismissing Case [DE #22-1] (the "**Original Casady Declaration**"), he "met Taylor Coleman who is the prime mover behind FANTASY HOLDINGS, LLC, and its various subsidiaries sometime in 2008 when I was looking for real estate investment opportunities in Arizona." *Original Casady Declaration* at ¶ 2(a).  Mr. Casady initiated contact with Mr. Coleman back in 2008 when Mr. Casady was interested in purchasing property that Mr. Coleman's former company owned and which was in bankruptcy at the time. *Coleman Declaration* at ¶ 7.  They became friends, and Mr. Casady learned and inquired about the businesses Mr. Coleman and Santadsin were engaged in. *Id.*  In fact, Mr. Casady expressed to Mr. Coleman a desire to recruit third-party investors he knew to invest monies in such businesses. *Id.* Mr. and Mrs. Casady personally negotiated that they become part owners of Fantasy Holdings as consideration for the $500,000, wherein (a) Mr. Casady would be its corporate legal counsel; (b) Ms. Casady would be its Chinese Liaison and consultant; (c) Mr. and Mrs. Casady would be Board members; and (d) Mr. and Mrs. Casady would both have voting rights for Fantasy Holdings. *See Fantasy Holdings LLC Term Sheet* attached as Exhibit "3" at p. 2 (the "**Term Sheet**"); *Santadsin Declaration* at ¶ 8; *Coleman*

*Declaration* at ¶ 6.   Mr. Casady also represented Mr. Coleman as his lawyer in an unsuccessful attempt to save Mr. Coleman's Arizona home from foreclosure.   *Coleman Declaration* at ¶ 7.

The Term Sheet went through ten (10) drafts between Mr. and Mrs. Casady and Defendants.  *Santadsin Declaration* at ¶ 8; *Coleman Declaration* at ¶ 6.   As a condition to providing $500,000 to Fantasy Holdings, Mr. and Mrs. Casady personally negotiated that they become part owners and voting members of Fantasy Holdings.  *Id*.     Shortly before the Note was executed, and in lieu of directly funding the loan themselves to Fantasy Holdings, Mr. Casady decided to donate shares of stock to Greystone and Greystone would:  (a) sell the shares for approximately $554,000; (b) return $49,000 to Kent Casady; and (c) lend $500,000 directly to Fantasy Holdings.  *Santadsin Declaration* at ¶ 7; *Coleman Declaration* at ¶ 5.  **It was Mr. Casady, not Defendants, that insisted that Plaintiff be made a party to the Note so he could take advantage of the tax savings**.[2] *Id*.

Paragraph 9 of the Amended Complaint then attempts to show the course of parties' dealings by making reference to where payments were to be sent:

(v) per Arizona defendants' voluntary agreement, all monthly payments made under the terms of the Note over a period of forty-eight (48) months were

---

[2]  Plaintiff claims that Greystone is a 501(c)(3) non-profit foundation that is dedicated to providing affordable and low-income housing.  *See Affidavit of James Holmberg* filed as an exhibit to Plaintiff's Motion to Set Aside Judgment [DE #21-6] at ¶ 2. Greystone is presumably not in the business of making loans to businesses like Fantasy Holdings, which has nothing to do with providing housing.  This is clearly in violation of Internal Revenue Guidelines for a tax-exempt organization, specifically *IRS Publication 4221-PF*, pp. 5 – 6.  Furthermore, based on a review of Plaintiff's publicly available tax returns for 2009 and 2015 (Form 990 used for non-profits), the only asset it claims it owns is the Note.  Nothing else.  As such, it appears that Greystone may have been set up or is primarily used to hold this Note to provide the tax savings Mr. Casady attempted to achieve.  Unclean hands on the part of Plaintiff and Mr. and Mrs. Casady in connection with the Note will be an affirmative defense asserted by Defendants in this case.  *See 2009 and 2015 Form 990 tax returns* (excerpts) attached hereto as Exhibit "4".

routinely made by the Arizona defendants were made by way of wire-transfer to the La Jolla branch of Union Bank in California; . . .

The terms of the Note show that Fantasy Holdings would make monthly payments to Mr. Casady for five (5) years, with a balloon payment due to Plaintiff at the end of such term. *See Note*. As the Court correctly pointed out in its Original Dismissal Order, sending monthly payments by themselves to a resident in a forum state is "not the deliberate creation of a 'substantial connection' with California." *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990); *see also Scullin Steel Co. v. National Ry. Utilization Corp.*, 676 F.2d 309, 314 (8th Cir. 1982) ("[t]he use of interstate facilities (telephone, the mail), *the making of payments in the forum state*, and the provision for delivery within the forum state are secondary or ancillary factors and cannot alone provide the "minimum contacts" required by due process"); *Atwal v. Myer*, 841 F. Supp. 2d 364, 367 (D.D.C. 2012) (District of Columbia court lacked personal jurisdiction over nonresident borrower in lender's action to recover money due under promissory note, even if borrower had made payments to lender while lender resided in District of Columbia; borrower had never been domiciled in District of Columbia, borrower's principal place of business had not been in District of Columbia, and lender had not loaned money to borrower within District of Columbia).

    2. <u>Terms of the Contract.</u>

    Furthermore, nothing in the Note mandates which forum a lawsuit should be brought in or which state law applies. No individual ever told Defendants verbally or in writing that any dispute would be subject to California law or a lawsuit in a California court. *Santadsin Declaration* at ¶¶ 15 – 16; *Coleman Declaration* at ¶¶ 14 – 15. Santadsin executed the Note in Arizona. *Santadsin Declaration* at ¶ 12 *Coleman Declaration* at ¶ 10; *See McGlinchy*, 845 F.2d at 816 (finding that no jurisdiction over the defendant, even though the contract was signed in the forum state, but was negotiated somewhere else and executed via mail).

### 3. Contemplated future consequences.

Paragraph 9 of the Amended Complaint then alleges that Defendants knew or should have known that their breach of the Note would cause future harm to Plaintiff:

> (vi) in conducting their activities, including borrowing money from a California nonprofit corporation, Arizona defendants were fully aware that their failure to pay the monies due under the Note would result in serious harm and damage, suffered in California by a California resident . . . .

It appears that Plaintiff is attempting to improperly apply the "Calder effects test" set forth in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), which is primarily reserved for determining specific personal jurisdiction in connection with a tort claim. "[T]he 'effects' test requires that the defendant allegedly have (1) ***committed an intentional act***, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). In this case, Plaintiff does not allege any tort claims. The only causes of action set forth in the Amended Complaint relate to Defendants' alleged breach of contract.

Regardless, "[t]o invoke *Calder*, a plaintiff must show the defendant's acts were "'performed for the very purpose of having their consequences felt in the forum state.'" *Viracon, Inc. v. J & L Curtain Wall LLC*, 929 F. Supp. 2d 878, 886 (D. Minn. 2013) (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390–91 (8th Cir. 1991)). In other words, the forum state must be the target of the defendant's alleged conduct, which requires something more than the defendant's knowledge that a company or resident in the forum state will suffer consequences from the alleged conduct, such as a failure to pay. *Id.*; *See, e.g.*, *Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 594–95 (8th Cir. 2011) (failure to pay a plaintiff in the forum state "was not uniquely or expressly aimed at the forum state or performed for the very purpose of having [its] consequences felt in the forum state") (citations omitted).

In its Original Dismissal Order, the Court also cites *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) as additional support that the future consequences of the contract should also be considered, including where most of the work was to be performed by a party.  In this case, the only connection with California and the Plaintiff is that the final payment was to be made to Plaintiff at the end of the Note's term.  *See Note*.  As this Court correctly pointed out in its Original Dismissal Order, "Defendants did not contemplate substantial future dealings in California by obliging themselves to make a single payment to Greystone five years after the note was signed."  *See Original Dismissal Order* at p. 10 [DE #15].

None of the causes of action set forth in Plaintiff's Complaint arose from any activity Defendants conducted in California.  Simply put, Defendants neither purposely availed themselves of California law nor engaged in activities in California that provide any California court to have specific jurisdiction.  As such, neither this Court nor any other court in California has personal jurisdiction over Defendants.

## C. Even if the Court finds that this Court has personal jurisdiction over Defendants, the exercise of personal jurisdiction is not reasonable.

Even assuming *arguendo* that Plaintiff has established personal jurisdiction, such jurisdiction must still be reasonable.  To establish reasonableness, the Court must look to:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000) (citing *Burger King Corp.*, 471 U.S. at 476 – 477, 105 S.Ct. 2174).  A court needs to balance all seven factors, as none are dispositive by itself.  *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993).

11

In analyzing the above-referenced elements in this case:

ELEMENT 1:  As argued *supra*, Defendants' contacts with California are tenuous at best to constitute purposeful interjection into California.

ELEMENT 2:  Expensive travel and legal costs, including paying for witnesses to travel to California to testify, would be extremely burdensome to Defendants to litigate this case in any state other than Arizona.  *Santadsin Declaration* at ¶¶ 18 – 19.

ELEMENT 4:  There does not appear to be anything unique about adjudicating this case in California instead of Arizona.  Upon information and belief, the law in both states is substantially the same involving an alleged breach of promissory note.  There is no substantial interest to adjudicate Plaintiff's alleged causes of action in California as opposed to Arizona.

ELEMENT 5:  This is the most significant element in this case.  It would be more efficient to adjudicate this case in Arizona for all parties, as (a) the main two witnesses to this case, Taylor Coleman and Santadsin, both reside in Arizona; and (b) Plaintiff's potential relief will require it to domesticate any judgment it may obtain pursuant to *28 U.S.C. § 1965* because all of Defendants' assets are in Arizona.  *Santadsin Declaration* at ¶¶ 2, 19 – 20.  Furthermore, as argued below, at the very minimum this Court is the improper venue for Santadsin because Santadsin is an individual domiciled in Arizona.  *Id*. at ¶ 2.  This is true, even if the Court finds that it has personal jurisdiction and venue over Fantasy Holdings.  ***At the very minimum, the Court would have to dismiss Santadsin from this action for improper venue, causing two separate lawsuits to be filed in Arizona and California.***  If Plaintiff files a similar lawsuit against Santadsin in Arizona, defending two (2) separate lawsuits would be extremely burdensome and unnecessary for Defendants.

ELEMENT 6:  Effective relief is not exclusive to adjudicating this matter in Arizona.  The same exact relief Plaintiff is seeking in this case can be achieved if the case is litigated in Arizona.

12

ELEMENT 7:  California is not the only forum to file this case.  Arizona clearly is another alternative forum with personal jurisdiction and proper venue over all parties to this action.

**D.  Assuming that this Court finds there is personal jurisdiction over Defendants, this case should be dismissed under *Fed. R. Civ. P. 12(b)(3)* for improper venue.**

Pursuant to *Fed. R. Civ. P. 12(b)(3)*, a court may dismiss a case if it finds that it is the improper venue, or as an alternative remedy, it may transfer the case to the correct venue pursuant to *28 U.S.C. § 1406*.  In determining if the plaintiff's preferred venue is improper, the court looks to *28 U.S.C. § 1391(b)*:

A civil action may be brought in—

(1)   a judicial district in which any defendant resides, ***if all defendants are residents of the State*** in which the district is located;

(2)   a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3)   if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*28 U.S.C. § 1391(b)* (emphasis added).  "The overriding purpose of § 1391(a) is to further the convenience of the parties." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir.1986) (citing *Gardner Engineering Corp. v. Page Engineering Co.*, 484 F.2d 27, 33 (8th Cir. 1973)).  "When the cause of action is personal to the individual defendant, the venue requirement must be met as to that defendant." *Cummings v. Western Trial Lawyers* Ass'n, 133 F. Supp. 2d 1144, 1149 (D. Ariz. 2001) (quoting *Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996)).  ***Based on the plain language of 28 U.S.C. § 1391(b)(1), when all defendants do not reside in the forum state for purposes of the venue statute, venue is not proper in that state.***  *Id.* at n.2.

1. <u>Venue in California is improper under *28 U.S.C. § 1391(b)(1)* because, at the very minimum, Santadsin does not reside in California.</u>

For purposes of establishing proper venue under *28 U.S.C. § 1391(b)(1)* <u>with respect to individuals,</u> "a natural person, including an alien lawfully admitted for permanent residence in the United States, shall be deemed to reside in the judicial district in which that person is domiciled." *28 U.S.C. § 1391(c)(1)*. In this case, there is no question that Santadsin is an individual who resides in Arizona, not California. *Amended Complaint* at ¶ 3; *Santadsin Declaration* at ¶ 2.

For purposes of establishing proper venue under *28 U.S.C. § 1391(b)(1)* <u>with respect to an entity (i.e., Fantasy Holdings),</u> "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." *28 U.S.C. § 1391(c)(2)*. In other words, Fantasy Holdings will be deemed to reside in California under *28 U.S.C. § 1391(b)(1)* only if this Court has personal jurisdiction over Fantasy Holdings.

Plaintiff argues *supra* that this Court has no personal jurisdiction over Fantasy Holdings. However, assuming *arguendo* that the Court finds that it does have personal jurisdiction over Fantasy Holdings for venue to be proper for Fantasy Holdings under *28 U.S.C. § 1391(b)(1)* (by virtue of *28 U.S.C. § 1391(c)(2)*), venue in California is still improper for Santadsin, as the application of *28 U.S.C. § 1391(c)(2)* for personal jurisdiction is limited to entities. ***Proper venue for individuals under 28 U.S.C. § 1391(b)(1) is established by meeting the requirements of 28 U.S.C. § 1391(c)(1), which solely focuses on an individual's domicile***. Santadsin only resides in Arizona. *Santadsin Declaration* at ¶ 2. At the very minimum, the Court would be required to separate this action and still dismiss Santadsin from this suit pursuant to *28 U.S.C. § 1391(c)(1)*

14

1    because his domicile is in Arizona, even if this Court concludes that venue is proper for

2    Fantasy Holdings because the Court has personal jurisdiction over Fantasy Holdings.

3        2.   Venue is also not proper under *28 U.S.C. § 1391(b)(2)* because no substantial
         part of the events or omissions occurred in California.

4

5        Under *28 U.S.C. § 1391(b)(2),* "venue is proper in a judicial district if 'a substantial

6    part of the events or omissions giving rise to the claim occurred' in that district." *Myers*

7    *v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001) (quoting *28 U.S.C. §*

8    *1391(b)(2)*).   As argued *supra*, the Note was signed and negotiated in Arizona and

9    through telephone conferences and electronic mail with Mr. Casady.      *Santadsin*

10   *Declaration* at ¶¶ 10 – 12; *Coleman Declaration* at ¶¶ 8 – 10.  Plaintiff was never part of

11   such negotiations. *Id.*  Additionally, the place of intended performance for this Note was

12   Arizona rather than California because Arizona was the location of the business utilizing

13   all funds provided under the Note, and the money to repay the Note would come from

14   funds generated in Arizona. *Santadsin Declaration* at ¶ 13; *Coleman Declaration* at ¶

15   12.  Furthermore, as stated in this Court's Original Dismissal Order, "Defendants did not

16   contemplate substantial future dealings in California by obliging themselves to make a

17   single payment to Greystone five years after the note was signed."   *See Original*

18   *Dismissal Order* at p. 10 [DE #15].  There is simply no nexus showing that substantial

19   events or omissions occurred anywhere but Arizona with respect to any of the claims set

20   forth in the Complaint.

21       3.   Venue is also not proper in California under *28 U.S.C. § 1391(b)(3)* because
         Arizona is another jurisdiction that this case can easily be brought.

22

23       There is no question that Arizona is the proper venue for this case.   Both

24   Defendants reside in Arizona.  Venue is not exclusive in this Court and not proper under

25   *28 U.S.C. § 1391(b)(3)* because the District Court in Arizona is clearly the only

26

27

1   alternative and correct venue, with personal jurisdiction over both Defendants.  This suit

2   should have been brought in Arizona in the first place.

3       Accordingly, this case should also be dismissed for improper venue.   As an

4   alternate remedy, this Court may transfer the case to the District of Arizona pursuant to

5   *28 U.S.C. § 1406.*

6   **E.  Even if venue and personal jurisdiction are proper, this case should be**

7   **transferred to the District of Arizona pursuant to *28 U.S.C. § 1404(a)* under**

8   **principles of *forum non-conveniens*.**

9       Even assuming *arguendo* that this Court finds proper venue and personal

10  jurisdiction over one or both Defendants, this Court should transfer this case to the

11  District of Arizona pursuant to *28 U.S.C. § 1404(a)*, which permits this Court to transfer

12  cases to any district in which the action could have been brought for the convenience of

13  the parties and in the interest of justice.  "The purpose of section 1404(a) is to 'prevent

14  the waste of time, energy, and money to protect litigants, witnesses and the public against

15  unnecessary inconvenience and expense.'"  *Hawkins v. Gerber Product Co.*, 924 F. Supp.

16  2d 1208, 1212 (S.D. Cal. 2013) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84

17  S.Ct. 805, 11 L.Ed.2d 945 (1964)).  To support a motion for transfer of venue pursuant

18  to *28 U.S.C. § 1404(a)*, the moving party must show "that venue is proper in the transferor

19  district; that the transferee district is one where the action might have originally been

20  brought; and that transfer will serve the convenience of the parties and witnesses and will

21  promote the interests of justice."  *Hawkins*, 924 F. Supp. 2d at 1212 (citing *Vu v. Ortho–*

22  *McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1155–56 (N.D. Cal. 2009), which quotes

23  *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D.

24  Cal. 1992)).

25      In this case, if this Court finds that venue is only proper for one Defendant but not

26  the other as argued *supra*, then transfer to Arizona under *28 U.S.C. § 1404(a)* would

27  allow one case against both Defendants to proceed in one venue, as opposed to two

16

separate cases in two separate courts against two separate defendants. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to [a] wastefulness of time, energy and money ... Moreover, such a situation is conducive to a race of diligence among litigants for a trial in the District Court each prefers." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960). *See also 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3854* (4th ed. 2016) (noting that transfer is warranted under § 1404(a)'s broad "interest of justice" reference when the transfer would prevent "multiplicity of litigation as a result of a single transaction or event.").

As argued *supra* and supported by the statements set forth in the Santadsin and Coleman Declarations, additional reasons supporting transfer of this case to Arizona include that: (a) the District of Arizona has personal jurisdiction over both Defendants and is the proper venue because both Defendants reside in Arizona and a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in Arizona pursuant to *28 U.S.C. § 1391(b)(2)*; (b) Defendants' witnesses are also residents in Phoenix, Arizona, and such witnesses could not be subpoenaed pursuant to *Fed. R. Civ. P. 45(c)(1)(A)* because they live further than 100 miles from the Southern District of California; (c) all of the events and omissions at issue occurred in Arizona; (d) all of the evidence is located in or around Phoenix, Arizona; (e) Defendants cannot afford counsel in California or the travel costs to attend hearings and a trial in California; (f) even assuming Plaintiff obtained a judgment in this Court, Plaintiff would still have to domesticate such judgment in the State of Arizona pursuant to *28 U.S.C. § 1965*; and (g) assuming a judgment is entered against any Defendant, all assets that Plaintiff may attach are only located in Arizona.

**F.  Pursuant to *Fed. R. Civ. P. 12(b)(5)*, this case should be dismissed because Santadsin was never served by a process server.**

Finally, this case should be dismissed because Santadsin was never properly served in accordance with the Federal Rules of Civil Procedure.  An individual  may be served: (a) in accordance with the law of the state where the court is located or where service is made; (b) by delivering a copy of the summons and complaint to the individual personally; (c) by leaving a copy of the summons and complaint  at the individual's dwelling or usual place of abode; or (d) by delivering a copy of the summons and complaint "to an agent authorized by appointment or by law to receive service of process." *Fed. R. Civ. P. 4(e)*.  Under the California Code of Civil Procedure, service on an individual outside California may be served personally or via certified mail with a return receipt. *CCP § 415.40*.  Under the Arizona Rules of Civil Procedure, an in-state individual must be served in the same manner set forth in (b) through (d) above. *Ariz. R. Civ. P. 4.1(d)*.  The complaint and summons must be served within 90 days after the complaint is filed. *Fed. R. Civ. P. 4(m)*.  "The filing of an amended complaint does not restart the 90-day period 'except as to those defendants newly added in the amended complaint.'" *Carr v. International Game* Technology, 770 F. Supp. 2d 1080, 1100 (D. Nev. 2011) (quoting *Bolden v. City of Topeka*, 441 F.3d 1129, 1148 (10th Cir. 2006).

In this case, no affidavit whatsoever has been filed by any process server showing service on either Defendant.  According to the original summons attached hereto as Exhibit "5", it was addressed to Fantasy Holdings' statutory agent Perkins Coie Brown & Bain P.A., not Santadsin's dwelling or place of abode.  Page 3 of Exhibit "5" also includes a print-out of Fantasy Holdings' Arizona Corporation Commission report confirming that the address listed on Santadsin's summons is merely the same address as the statutory agent for Fantasy Holdings.  Santadsin never was served either the complaint or summons individually at any time. *Santadsin Declaration* at ¶ 17.  Accordingly, this case should be dismissed with respect to Santadsin for insufficient service of process.

### III. <u>CONCLUSION</u>

Despite the additional allegations set forth in the Amended Complaint, Plaintiff has still not established a prima facie case for personal jurisdiction.  There is neither general nor specific jurisdiction in this Court for either Defendant.  Furthermore, there is no question that at the very minimum, this Court is not the proper venue for individual Santadsin.   As such, even if the Court finds that there is personal jurisdiction for Defendants and that venue is proper for Fantasy Holdings, the case should be dismissed or transferred to Arizona due to this Court being the improper venue for individual Santadsin.  Finally, because Santadsin was not properly served the original complaint within 90-days after the complaint was issued, the case should be dismissed for insufficient of service of process.

**WHEREFORE**, Defendants respectfully request that this Court enter an order:

A. Dismissing Plaintiff's complaint without further leave to amend pursuant to *Fed. R. Civ. P. 12(b)(2)* for lack of personal jurisdiction;

B. Dismissing Plaintiff's complaint without further leave to amend pursuant to *Fed. R. Civ. P. 12(b)(3)* for improper venue;

C. Dismissing Plaintiff's complaint without further leave to amend pursuant to *Fed. R. Civ. P. 12(b)(5)* for insufficient service of process;

D. In the alternative, transferring this proceeding to the United States District Court for the District of Arizona under *28 U.S.C. § 1406(a)* (cure of defective venue) or *28 U.S.C. § 1404(a)* (forum non-conveniens);

E. Awarding Defendants' attorneys' fees and costs incurred in connection with this Motion; and

F. For such other and further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED** this 20th day of December, 2016.

**LAW OFFICE OF SCOTT W. HYDER, PLC**

By: /s/ Scott W. Hyder, AZ Bar No. 017282
    Scott W. Hyder
    Attorney for Defendants Fantasy Holdings
    LLC and Narongyos Santadsin
    E-mail: shyder@scotthyderlaw.com

I hereby certify that the foregoing was filed with the Clerk of the Court this 20th day of December 2016 via ECF

/s/ Scott W. Hyder

List of Exhibits

Exhibit "1"    -    Declaration of Apollo Santadsin
Exhibit "2"    -    Declaration of Taylor Coleman
Exhibit "3"    -    Fantasy Holdings Term Sheet
Exhibit "4"    -    Plaintiff's 2009 and 2015 Tax Returns
Exhibit "5"    -    Summons and Proof of Statutory Agent Address for Fantasy Holdings

20