# EXHIBIT "1"

(Declaration of Apollo Santadsin)

Scott W. Hyder, AZ Bar No. 017282
**LAW OFFICE OF SCOTT W. HYDER, PLC**
3420 East Shea Blvd., Ste. 200
Phoenix, Arizona 85028
Phone: (602) 923-7370
Fax: (602) 795-6010
E-mail: shyder@scotthyderlaw.com
Attorney for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREYSTONE HOUSING FOUNDATION, INC., a California Non-Profit 501(c)(3) Corporation,<br><br>Plaintiff<br><br>v.<br><br>FANTASY HOLDINGS, LLC, an Arizona limited liability company; NARONGYOS SANTADSIN, an individual,<br><br>Defendants | Case No. 3:16-cv-00300-AJB-DHB<br><br>**DECLARATION OF NARONGYOS SANTADSIN** |

I, Narongyos Santadsin, declare that:

1. I am over eighteen (18) years of age and a legal resident of Maricopa County, State of Arizona. I make this Declaration of matters within my personal knowledge or upon my belief, and I am competent to testify to them.

2. My domicile and personal residence is in Phoenix, Arizona. I do not reside in any other state, including California.

3. Since its inception, I have been the manager and a member of Fantasy Holdings LLC, an Arizona limited liability company ("**Fantasy Holdings**").

4. Fantasy Holdings is a limited liability company and was formed in the State of Arizona and is not registered as a foreign entity in California or any other state. Its principal place of business is Arizona.

5. Fantasy Holdings and I conduct business in Arizona. Neither myself nor Fantasy Holdings has ever conducted business in California.

6. I was present and participated in negotiations in connection with a $500,000 payment that is the subject of that certain Promissory Note dated July 30, 2009 (the "**Note**") between Fantasy Holdings and Plaintiff Greystone Housing Foundation Inc. ("**Greystone**").

7. Before the Note was executed and during the negotiations regarding the Note, Kent Casady personally told me that the source of funds for the loan were to come from him and his wife Jade Casady. Shortly before the Note was executed, and in lieu of directly funding the loan themselves to Fantasy Holdings, Mr. Casady unilaterally decided and told me that he was going to donate shares of stock to Greystone and Greystone would: (a) sell the donated shares for approximately $554,000; (b) return $49,000 to Kent Casady; and (c) lend $500,000 directly to Fantasy Holdings. Mr. Casady informed me that he would obtain certain tax savings by structuring the Note in this manner.

8. As a condition to providing $500,000 to Fantasy Holdings, Mr. and Mrs. Casady personally negotiated with me and Mr. Coleman that they become part owners of Fantasy Holdings, wherein (a) Mr. Casady would be its corporate legal counsel; (b) Ms. Casady would be its Chinese Liason and consultant; (c) Mr. and Mrs. Casady would be Board members; and (d) Mr. and Mrs. Casady would both have voting rights for Fantasy Holdings (the "**Term Sheet**"). The Term Sheet went through approximately ten (10) drafts before it was executed.

9. During 2008 and 2009, Mr. Casady also provided legal advice and services to me and Fantasy Holdings here in Arizona. Such legal services included the formation

and structure of Fantasy Holdings and devising a joint venture agreement for Fantasy Holdings involving himself, myself, Ms. Casady and Mr. Coleman.

10. All of the negotiations in connection with the Note were between myself, Taylor Coleman, and Mr. and Ms. Casady. Neither myself nor anyone else who works with me in my businesses ever had any conversations or negotiations regarding the Note with Greystone or any of its employees, agents, officers or directors before I executed the Note.

11. All of the negotiations and conversations that took place regarding the Note and the Term Sheet occurred between Mr. and Mrs. Casady, Mr. Coleman and myself in Phoenix, Arizona or via telephone and/or electronic mail.

12. I executed the Note and the Term Sheet in Phoenix, Arizona. At no time did I, Mr. Coleman or any other party representing myself or Fantasy Holdings travel to California for the purpose of signing the Note, or negotiating any term of this transaction.

13. All business activities that the $500,000 proceeds were used for were conducted in Arizona. Any money to pay debts of Fantasy Holding or myself, including any amounts alleged due under the Note, would come from funds generated in Arizona.

14. No payment has ever been made to Greystone in connection with the Note.

15. At the time I agreed and executed the Note, it was my understanding that the Note would be controlled by Arizona law and that any legal dispute regarding the Note would be adjudicated by a court in the State of Arizona. At no time have I or Fantasy Holdings ever consented that California would have jurisdiction over any dispute that I, Mr. Coleman, Fantasy Holdings or any other of my businesses would ever be involved in, including the current dispute that is the subject of this action.

16. Neither Mr. and Mrs. Casady, any individual from Greystone, nor any other individual whatsoever represented to me, and I would not have imagined, that Greystone would claim that it would be able to sue me or Fantasy Holdings in California or that I, Fantasy Holdings, or any other of my businesses would be subject to California law.

17. I was never served with the original complaint, the amended complaint or any other pleading in California, Arizona, or anywhere else.

18. I would need to be present for the trial and any pre-trial hearings in this case. Trial and pre-trial hearings in California would be a burden for me and Fantasy Holdings for several reasons: (a) my only source of employment is from the operation of my business Arizona, and being away from Arizona would impair my ability to manage the day-to-day operations of my business in Arizona; (b) I am the manager and supervisor of employees of my business in Phoenix, Arizona; (c) I am unable to afford counsel in California; and (d) I am unable to afford to travel to California.

19. The witnesses I will need to testify in this litigation would be Arizona residents. These Arizona residents include myself and Mr. Coleman.

20. I have no real or personal property or other assets in California. All of my assets are located in Arizona.

I declare under penalty of perjury that this is true to the best of my knowledge, understanding and belief.

_____
NARONGYOS SANTADSIN

4