# EXHIBIT "2"

(Declaration of Taylor Coleman)

```
1  Scott W. Hyder, AZ Bar No. 017282
   LAW OFFICE OF SCOTT W. HYDER, PLC
2  3420 East Shea Blvd., Ste. 200
3  Phoenix, Arizona 85028
   Phone: (602) 923-7370
4  Fax: (602) 795-6010
5  E-mail: shyder@scotthyderlaw.com
   Attorney for Defendants
6
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREYSTONE HOUSING FOUNDATION, INC., a California Non-Profit 501(c)(3) Corporation,<br><br>Plaintiff<br><br>v.<br><br>FANTASY HOLDINGS, LLC, an Arizona limited liability company; NARONGYOS SANTADSIN, an individual,<br><br>Defendants | Case No. 3:16-cv-00300-AJB-DHB<br><br>**DECLARATION OF TAYLOR COLEMAN** |

I, Taylor Coleman, declare that:

1. I am over eighteen (18) years of age and a legal resident of Maricopa County, State of Arizona. I make this Declaration of matters within my personal knowledge or upon my belief, and I am competent to testify to them.

2. My domicile and personal residence is in Phoenix, Arizona.

3. Since the inception of Apollo Santadsin's businesses, I have closely worked with and assisted Mr. Santadsin with the day-to-day operations of his businesses, including Fantasy Holdings LLC ("**Fantasy Holdings**"). I am also Mr. Santadsin's domestic partner.

4. I was present and participated in negotiations in connection with a $500,000 payment that is the subject of that certain Promissory Note dated July 30, 2009 (the "**Note**") between Fantasy Holdings and Greystone Housing Foundation Inc. ("**Greystone**").

5. Before the Note was executed and during the negotiations regarding the Note, Kent Casady personally told me that the source of funds for the loan were to come from him and his wife Jade Casady. Shortly before the Note was executed, and in lieu of directly funding the loan themselves to Fantasy Holdings, Mr. Casady unilaterally decided and told me that he was going to donate shares of stock to Greystone and Greystone would: (a) sell the donated shares for approximately $554,000; (b) return $49,000 to Kent Casady; and (c) lend $500,000 directly to Fantasy Holdings. Mr. Casady informed me that he would obtain certain tax savings by structuring the Note in this manner.

6. As a condition to providing $500,000 to Fantasy Holdings, Mr. and Mrs. Casady personally negotiated with me and Mr. Santadsin that they become part owners of Fantasy Holdings, wherein (a) Mr. Casady would be its corporate legal counsel; (b) Ms. Casady would be its Chinese Liason and consultant; (c) Mr. and Mrs. Casady would be Board members; and (d) Mr. and Mrs. Casady would both have voting rights for Fantasy Holdings (the "**Term Sheet**"). The Term Sheet went through approximately ten (10) drafts before it was executed.

7. Mr. Casady first contacted me back in 2008, informing me that he was interested in purchasing real estate that my former company owned and which was in bankruptcy at the time. We became friends thereafter, and he learned and inquired about the businesses I was engaged in with Mr. Santadsin. In fact, Mr. Casady expressed to me a desire to recruit third-party investors he knew to invest monies in such businesses. During 2008 and 2009, Mr. Casady also provided legal advice and services to me, Mr. Santadsin, and Fantasy Holdings here in Arizona. Such legal services included the

2

formation and structure of Fantasy Holdings, devising a joint venture agreement for Fantasy Holdings involving himself, myself, Ms. Casady and Mr. Santadsin, and providing me legal representation in trying to prevent my former residence from being repossessed via foreclosure.

8. All of the negotiations in connection with the Note were between myself, Mr. Santadsin, and Mr. and Ms. Casady. I never had any conversations or negotiations regarding the Note or anything else with Greystone or any of its employees, agents, officers or directors before the Note was executed by any party.

9. All of the negotiations and conversations that took place regarding the Note and the Term Sheet occurred between Mr. and Mrs. Casady, Mr. Santadsin and myself in Phoenix, Arizona or via telephone and/or electronic mail.

10. I witnessed Mr. Santadsin execute the Note and the Term Sheet in Phoenix, Arizona. At no time did I, Mr. Santadsin or any other party representing Fantasy Holdings travel to California for the purpose of signing the Note or negotiating any term of this transaction.

11. Fantasy Holdings and Mr. Santadsin conduct business in Arizona. Neither myself, Mr. Santadsin, nor Fantasy Holdings has ever conducted business in California.

12. All business activities that the $500,000 proceeds were used for were conducted in Arizona. Any money to pay debts of Fantasy Holding or Mr. Santadsin, including any amounts alleged due under the Note, would come from funds generated in Arizona.

13. No payment has ever been made to Greystone in connection with the Note.

14. At the time the Note was executed, it was my understanding that the Note would be controlled by Arizona law and that any legal dispute regarding the Note would be adjudicated by a court in the State of Arizona. As part of the negotiations involving the Note, at no time did I ever consent that California would have jurisdiction over any

3

1 dispute that I, r. Santadsin, Fantasy Holdings or any other of Mr. Santadsin's businesses would ever be involved in, including the current dispute that is the subject of this action.

15. Neither Mr. and Mrs. Casady, any individual from Greystone, nor any other individual whatsoever represented to me, and I would not have imagined, that Greystone would claim that it would be able to sue Mr. Santadsin or Fantasy Holdings in California or that Mr. Santadsin, Fantasy Holdings, or any other of Mr. Santadsin's businesses would be subject to California law.

I declare under penalty of perjury that this is true to the best of my knowledge, understanding and belief.

*Taylor Coleman*
TAYLOR COLEMAN