UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREYSTONE HOUSING FOUNDATION, INC., a California Non-Profit 501(c)(3) Corporation,<br><br>Plaintiff,<br><br>v.<br><br>FANTASY HOLDINGS, LLC, an Arizona Limited Liability Company; NARONGYOS SANTADSIN, an Individual; DOES 1 THROUGH 10, inclusive,<br><br>Defendants. | Case No.: 16-CV-0300-AJB-DHB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND DISMISSING ACTION WITH PREJUDICE**<br><br>(Doc. No. 28) |

Presently before the Court is Defendants Fantasy Holdings, LLC's ("Fantasy") and Narongyos Santadsin's ("Santadsin") (collectively, "Defendants") motion to dismiss the amended complaint for lack of personal jurisdiction, improper venue, and insufficient service of process and, alternatively, to transfer venue. (Doc. No. 28.) Plaintiff Greystone Housing Foundation, Inc. ("Greystone") opposes the motion. (Doc. No. 46.) Having reviewed the parties' legal arguments in light of controlling legal authority, and pursuant to Local Civil Rule 7.1.d.1, the Court finds the matter suitable for decision on the papers, without oral argument. For the reasons set forth below, the Court **GRANTS** Defendants'

1

motion and **DISMISSES** this case **WITH PREJUDICE**.

### BACKGROUND

This dispute arises from Defendants' alleged failure to repay monies borrowed pursuant to a promissory note ("note") that named Greystone as the payee. Greystone is a California non-profit corporation with its principal place of business in San Diego, California. (Doc. No. 26 ¶ 1.)[1] Fantasy is an Arizona limited liability company with its principal place of business in Phoenix, Arizona. (*Id.* ¶ 2.) Santadsin is an individual domiciled in Arizona. (*Id.* ¶ 3.) He is Fantasy's manager and sole member. (*Id.* ¶ 4.)

On July 30, 2009, Defendants signed the note, through which they borrowed $500,000 from Greystone. (*Id.* ¶ 10; Doc. No. 26-1 at 2.) Fantasy signed the note (through Santadsin) as borrower; Santadsin signed the note as guarantor. (Doc. No. 26 ¶ 10; Doc. No. 26-1 at 2.) Fantasy agreed to make interest-only payments to non-party Kent Casady ("Casady") for five years, after which the principal would become due and payable to Greystone. (Doc. No. 26 ¶ 11; Doc. No. 26-1 at 2.) Pursuant to the note, Greystone financed and disbursed the funds to Defendants. (Doc. No. 26 ¶ 10.)

On July 30, 2014, the note matured, and the entire $500,000 became due and payable. (*Id.* ¶ 12.) Defendants failed to make this payment. (*Id.*; Doc. No. 28-2 ¶ 14.) Because of this default, Greystone instituted this lawsuit by filing the original complaint on February 5, 2016, alleging contract-related claims. (Doc. No. 1.) Defendants successfully moved to dismiss the original complaint for lack of personal jurisdiction. (Doc. Nos. 5, 15.) On December 5, 2016, Greystone filed an amended complaint. (Doc. No. 26.) Defendants move to dismiss this complaint, again asserting lack of personal jurisdiction, as well as arguing improper venue and insufficient service of process. (Doc. No. 28.) The Court granted Greystone limited jurisdictional discovery to assess the existence of personal jurisdiction over Defendants in this case. (Doc. No. 32.) Following

---

[1] The Court cites to the blue CM/ECF-generated document and page numbers located at the top of each page.

such discovery, Greystone filed an opposition, and Defendants replied. (Doc. Nos. 46, 47.) This order follows.

**LEGAL STANDARD**

"Personal jurisdiction over a nonresident defendant is tested by a two-part analysis." *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994). The exercise of jurisdiction must satisfy the requirements of both the applicable state long-arm statute and federal due process. *Id.* at 1404–05. California's long-arm statute is coextensive with the limits of due process. Cal. Civ. Proc. § 410.10; *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001), *abrogated on other grounds as recognized in Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017). Accordingly, the Court need only consider the requirements of due process. *Fed. Deposit Ins. Co. v. British-Am. Ins. Co.*, 828 F.2d 1439, 1441 (9th Cir. 1987).

Due process requires that a nonresident defendant have certain minimum contacts with the forum state such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This test may be satisfied in one of two ways. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1986). If the defendant's contacts with the forum state are substantial or "continuous and systematic," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984), the court may properly exercise general jurisdiction over the defendant "even if the cause of action is unrelated to the defendant's forum activities," *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,, 557 F.2d 1280, 1287 (9th Cir. 1977). Where the defendant's contacts with the forum state will not support the court's exercise of general jurisdiction, "jurisdiction may nonetheless be proper as an assertion of limited [*i.e.*, specific] jurisdiction if there is a strong relationship between the quality of the defendant's forum contacts and the cause of action." *Decker Coal Co.*, 805 F.2d at 839 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).

The plaintiff bears the burden of establishing the court's personal jurisdiction over a defendant. *Unocal Corp.*, 248 F.3d at 922. On a motion to dismiss, the Court may decide

the issue of personal jurisdiction on the basis of affidavits and documentary evidence by the parties, or hold an evidentiary hearing regarding the matter. *See Data Disc, Inc.*, 557 F.2d at 1285. If the motion is based on the former, the plaintiff need only make a prima facie showing of facts establishing personal jurisdiction. *Id.* Uncontroverted allegations in the complaint are accepted as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Unocal Corp.*, 248 F.3d at 922.

## DISCUSSION

Defendants seek dismissal pursuant to Rule 12(b)(2), (3), and (5) for lack of personal jurisdiction, improper venue, and insufficient service of process, respectively. (Doc. No. 28.) Alternatively, Defendants ask the Court to transfer this case to the District of Arizona under 28 U.S.C. § 1406(a) to cure venue or 28 U.S.C. § 1404(a) for the convenience of the parties. (*Id.*) As explained below, the Court finds it lacks personal jurisdiction over Defendants; accordingly, the Court does not reach Defendants' remaining arguments. *Cf. Julio v. Wells Fargo Bank*, No. 11-CV-00696-LHK, 2011 WL 11048327, at *2 (N.D. Cal. July 21, 2011) (declining to reach defendant's personal jurisdiction argument after dismissing action for improper venue).

*I.     General Jurisdiction*

Defendants first argue that there is no general jurisdiction over them because they are both domiciled in Arizona and otherwise do not have the requisite contacts with California. (Doc. No. 28-1 at 8–9; Doc. No. 47 at 8–17.) Greystone responds that Defendants do significant business in California through Kodi Distributing, LLC ("Kodi") and the operation of the leluv.com website. (Doc. No. 46 at 11–16.)

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) [defendants] to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co.*, 326 U.S. at 317). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state

to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

General jurisdiction over an individual is permissible only where he has been served with process while voluntarily in the forum, is domiciled in the forum, or consents to the court's jurisdiction. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880–81 (2011) (Kennedy, J., plurality); *see Pennoyer v. Neff*, 95 U.S. 714, 722 (1877). "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (citation omitted). Outside of these paradigm bases, only "in an exceptional case" should a court find a corporation's operations in the forum to be "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n.19.

Greystone first argues that Defendants' marketing strategy and sales to California consumers through leluv.com and third-party retailers, such as Amazon, eBay, and Etsy, demonstrate Defendants have purposefully availed themselves of California. (Doc. No. 46 at 10.) Given that Defendants' sales and advertising efforts have no bearing on the instant dispute—a $500,000 loan to Defendants on which they have purportedly defaulted— Defendants' sales efforts in California are relevant to this motion only to the extent those efforts serve as a basis for general jurisdiction. *See Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 (stating due process is not offended by a forum's exercise of general jurisdiction over a defendant "[e]ven when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum" where "there are sufficient contacts between the State and the foreign corporation"); *Decker Coal Co.*, 805 F.2d at 839 (stating specific jurisdiction over a defendant may be exercised only where the "'nature and quality' of the defendant's contacts with the forum state are significant *in relation to the specific cause of action*" (quoting *Data Disc, Inc.*, 557 F.2d at 1287) (emphasis added)).

Greystone falls far short of making a prima facie case for general jurisdiction. None of the traditional bases for exercising general jurisdiction over Santadsin are present in this case. Santadsin is domiciled in Arizona. (Doc. No. 26 ¶ 3.) There is no suggestion that

Santadsin was served with process in California. In fact, Santadsin asserts he has never been served with either complaint in this case. (Doc. No. 47-1 ¶ 17.) Furthermore, given the instant motion, it is clear that Santadsin does not consent to jurisdiction. (*See id.* ¶ 15.) The traditional bases for general jurisdiction over Fantasy are likewise absent. Fantasy is incorporated under the laws of Arizona with its principal (and only) place of business in Phoenix, Arizona. (Doc. No. 26 ¶ 2.)

As such, Greystone must show that this is an "exceptional case" before the Court may exercise general jurisdiction. The Court finds that it is not. First and foremost, the only marketing efforts and sales in California to which Greystone alludes are those of Kodi, a limited liability company that is *not* a defendant in this action. "It is well-established that a parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003). "Similarly, a holding company is not vicariously liable for the actions of its licensees." *MMI, Inc. v. Baja, Inc.*, 743 F. Supp. 2d 1101, 1110 (D. Ariz. 2010) (citing *Oberlin v. Marlin Am. Corp.*, 596 F.2d 1322 (7th Cir. 1979)).

However, imputation of "a local entity's contacts to its foreign affiliate" is permissible where plaintiff "demonstrates an alter ego relationship between the entities[.]" *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1079 (9th Cir. 2015). To demonstrate that the alter ego doctrine applies, a plaintiff "must make out a prima facie case '(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.'" *Unocal Corp.*, 248 F.3d at 926 (quoting *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996)).

To meet the first prong, a plaintiff must show "the parent controls the subsidiary 'to such a degree as to render the latter a mere instrumentality of the former.'" *Id.* (quoting *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995)). "This test envisions pervasive control over the subsidiary, such as when a parent corporation 'dictates every facet of the

subsidiary's business—from broad policy decisions to routine matters of day-to-day operation.'" *Ranza*, 793 F.3d at 1073 (quoting *Am. Tel. & Tel. Co.*, 94 F.3d at 591).

Greystone has failed to make a prima facie showing on the first prong. The facts before the Court are as follows: Santadsin is the sole member of both Fantasy and Kodi, both of which are LLCs. (Doc. No. 43-2 at 11.) Fantasy, however, is merely a holding company that owns the patent and trademark "Leluv," as well as the leluv.com domain name. (Doc. No. 14-1 ¶ 1.) Kodi is Fantasy's licensee, the former having been granted by the latter a license to "establish[] a domain name LeLuv.com and LeLuv.net on the internet for an ecommerce website with shopping cart." (Doc. No. 43-3 at 8.) Neither common ownership nor the licensor-licensee relationship carry Greystone's burden of showing that Kodi is a mere instrumentality of Fantasy. *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) ("it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary" (citation omitted)); *MMI, Inc.*, 743 F. Supp. 2d at 1111 ("MMI's evidence that ruralking.com and Rural King Holding [a holding company] share the same address and owner do not satisfy the first prong of the alter ego test because distinct legal entities may have a common address and ownership. Absent the allegation that Rural King Holding is involved in the operation of ruralking.com in any way, MMI has failed to state a prima facie case that Rural King Holding is an alter ego of ruralking.com." (citations omitted)).

Likewise, Santadsin's conduct of business in his capacity as a member and manager of Kodi does not render him subject to general jurisdiction in California. It is well established that a "corporate officer who has contact with a forum only with regard to the performance of his official duties is not subject to personal jurisdiction in that forum." *Kransco Mfg., Inc. v. Markwitz*, 656 F.2d 1376, 1379 (9th Cir. 1981) (quoting *Forsythe v. Overmyer*, 576 F.2d 779, 783–84 (9th Cir. 1978)).

Even if Greystone carried its burden on the first prong, there is no showing that failure to disregard Defendants' and Kodi's separate identities would result in fraud or injustice. "[Greystone] provides no explanation why it cannot seek relief in an appropriate forum such as [Arizona], the [state] in which [Fantasy] is incorporated and has its principal

places of business" and in which Santadsin is domiciled. *Maple Leaf Adventures Corp. v. Jet Tern Marine Co.*, No. 15-CV-2504-AJB-BGS, 2016 WL 3063956, at *8 (S.D. Cal. Mar. 11, 2016). Accordingly, the Court finds imputation of Kodi's contacts with California to Defendants to be improper.

Greystone contends imputation is appropriate because Santadsin is an agent of Fantasy, and "the actions of an agent are attributable to the principal." (Doc. No. 46 at 16.) In other words, Greystone invokes the agency theory of piercing the corporate veil for jurisdictional purposes and attributing a local entity's contacts to an out-of-state affiliate. Unfortunately for Greystone, "[t]he Supreme Court invalidated this test." *Ranza*, 793 F.3d at 1071. Thus, "[t]he agency test is [] no longer available to [Greystone] to establish jurisdiction over [Defendants]." *Id.* As such, the only theory for piercing the corporate veil available is the alter ego theory, and as discussed above, Greystone fails to show Kodi is an alter ego of either Defendant.

Even if it were appropriate to impute Kodi's business dealings in California to Defendants, the information provided is insufficient to establish this is an "exceptional case" making the exercise of general jurisdiction proper. First, the amount of sales Kodi has shipped to persons in California—specifically, $232,837.12 in 32 months, or $7279.29 per month, (Doc. No. 46-1 ¶ 3)—is, for purposes of the instant inquiry, trivial. *See Focht v. Sol Melia S.A.*, No. C-10-0906 EMC, 2012 WL 162564, at *7 (N.D. Cal. Jan. 19, 2012) (finding $11 million in annual revenue insufficient to establish general jurisdiction). Second, Greystone provides no information concerning whether Kodi "does a majority—or even a sizeable portion—of its business in California . . . . In fact, [Greystone] provides no information whatsoever concerning the volume of business [Kodi] conducts in California as opposed to" business it conducts in the rest of the country. *Maple Leaf Adventures Corp.*, 2016 WL 3063956, at *4.

In short, the Court finds general jurisdiction over Defendants does not exist here.

## II. Specific Jurisdiction

Defendants next argue there is no specific jurisdiction over them in this case because

there are no facts suggesting they purposefully availed themselves of California. (Doc. No. 28-1 at 9–15; Doc. No. 47 at 4–8.) Greystone responds that Defendants' affirmative acts of soliciting Casady to make the $500,000 loan, signing the note, and mailing payments to Casady under the note are sufficient, "by their very nature," to establish purposeful availment. (Doc. No. 46 at 9–10.) Greystone further argues that the leluv.com website and Kodi's sales to California consumers also establish purposeful availment. (*Id.* at 10–17.)

The Court may exercise specific jurisdiction over a defendant where the "'nature and quality' of the defendant's contacts with the forum state are significant in relation to the specific cause of action." *Decker Coal Co.*, 805 F.2d at 839 (quoting *Data Disc, Inc.*, 557 F.2d at 1287). Courts in the Ninth Circuit use a three-prong test to make this determination. *Id.* First, "[t]he nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986). Second, the plaintiff's claim must arise out of or result from the defendant's forum-related activities. *Id.* Third, the exercise of jurisdiction must be reasonable. *Id.*

The plaintiff bears the burden of establishing the first two prongs. *Schwarzenegger*, 374 F.3d at 802. If the plaintiff satisfies this burden, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476–78). If the plaintiff fails to carry its burden, then "the jurisdictional inquiry ends and the case must be dismissed." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006)).

The first prong encompasses two distinct concepts: "purposeful availment" and "purposeful direction." *Schwarzenegger*, 374 F.3d at 802. The former applies to suits sounding in contract, the latter to suits sounding in tort. *Id.* Satisfaction of either test satisfies the first prong. *See id.* Greystone's claims sound in contract, so only the purposeful

availment test will be analyzed. *See Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) (applying purposeful availment test in breach of contract action).

The purposeful availment test is satisfied if the defendant has taken deliberate action within the forum state or if he or she has created continuing obligations to forum residents. *See Travelers Health Ass'n v. Commonwealth of Va.*, 339 U.S. 643, 647 (1950); *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). The mere existence of a contract with an effect in the forum state is not sufficient to support jurisdiction. *Burger King Corp.*, 471 U.S. at 478. Rather, the Court should take a realistic approach, considering the parties, prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing. *Id.* at 479. In making this assessment, the Court must consider only the defendant's actions. *See Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 416–17; *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988). In other words, actions instituted by the plaintiff bear no weight on this assessment. *Sinatra*, 854 F.2d at 1195.

Greystone has failed to carry its burden of making a prima facie showing that Defendants have purposefully availed themselves of California. The amended complaint states that Defendants solicited the loan funds from Greystone. (Doc. No. 26 at 4 ¶ 9.) Defendants dispute the veracity of this statement, asserting Casady reached out to them about the business venture. (Doc. No. 28-1 at 9–12.) As the Court noted in its order dismissing the original complaint, whether Defendants initiated the transaction is highly pertinent to the instant inquiry because "[w]hen a California business seeks out [business opportunities] in other states . . . [and] deals with [foreign businesses] by out-of-state agents or by interstate mail and telephone, it is not entitled to force th[at business] to come to California to defend an action on the contract." *Roth*, 942 F.2d at 621–22 (quoting *Thos. P. Gonzalez Corp. v. Consejo Nacional de Producion de Costa Rica*, 614 F.2d 1247, 1252 (9th Cir. 1980)). (*See also* Doc. No. 15 at 9.) On the other hand, "solicitation of business in the forum state that results in business being transacted or contract negotiations will probably be considered purposeful availment." *Sinatra*, 854 F.2d at 1195 (citing *Decker*

*Coal Co.*, 805 F.2d at 840).

Greystone's allegation in the amended complaint that Defendants solicited the note is belied by the evidence before the Court. *See Unocal Corp.*, 248 F.3d at 922 (requiring the court to accept only *uncontroverted* allegations in the complaint as true). Greystone curiously cites to Exhibit G for the proposition that Defendants "urgently needed business financing for 'start-up' defendant Fantasy [] and actively and aggressively solicited $500,000 of these funds from a California lending source[.]" (Doc. No. 46 at 9.) Exhibit G is a declaration from Taylor Coleman, in which Coleman states,

> Mr. Casady first contacted me back in 2008, informing me that he was interested in purchasing real estate that my former company owned and which was in bankruptcy at the time. We became friends thereafter, and he learned and inquired about the businesses I was engaged in with Mr. Santadsin. In fact, Mr. Casady expressed to me a desire to recruit third-party investors he knew to invest monies in such businesses.

(Doc. No. 43-4 at 19 ¶ 7.) Accordingly, Greystone's own evidence supports Defendants' version of events, namely, that Casady initiated discussions.

Greystone also points to the execution of the note, the California origination of the loan funds, payments made to California residents, and contemplated payment of the loan principal to Greystone as supporting a finding of purposeful availment. (Doc. No. 46 at 9–10.) Greystone's contention, however, ignores the Court's prior ruling in this case dismissing the original complaint for lack of personal jurisdiction. In that ruling, the Court found Defendants did not purposefully avail themselves of California where the facts before the Court showed that (1) negotiations took place in Arizona or via telephone and/or email; (2) Santadsin executed the note in Arizona; (3) the note demonstrated little contemplated future consequences in California, even though it required monthly interest payments to Casady and a single payment to Greystone; and (4) the note did not contain a choice-of-law provision or forum selection clause. (Doc. No. 15 at 9–11.)

"Under the law of the case doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court

in the identical case.'" *Gallagher v. San Diego Unified Port Dist.*, 14 F. Supp. 3d 1380, 1389 (S.D. Cal. 2014) (quoting *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998)). However, the doctrine "should not be applied woodenly in a way inconsistent with substantial justice." *United States v. Miller*, 822 F.2d 828, 832 (9th Cir. 1987). Accordingly, the Court has the discretion to depart from the law of the case if "(1) [t]he first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would result." *Gallagher*, 14 F. Supp. 3d at 1389 (citing *Cuddy*, 147 F.3d at 1114). "Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

Greystone offers no basis for departing from the law of the case, and the Court finds none exist. In fact, the evidence adduced since that order's issuance confirms to the Court that personal jurisdiction in this case is lacking. In the prior order, the Court noted the importance of determining "whether Defendants, Greystone, or Casady initiated the transaction." (Doc. No. 15 at 9.) Despite this guidance, Greystone has failed to proffer any proof that Defendants solicited Casady or otherwise initiated the transaction. As noted above, the affidavit Greystone provides actually supports *Defendants'* contention that Casady approached them. As such, the Court will not revisit its determination that the prior dealings, negotiations, execution of the note, and contemplated future consequences (or lack thereof) fail to show Defendants purposefully availed themselves of California.

In its prior order, the Court did not address whether the funds' California origin has any impact on the jurisdictional inquiry. It does not. Greystone does not suggest Defendants "ever requested that the checks be drawn on a [California] bank or that there was any negotiation between [the parties] with respect to the location or identity of the bank on which checks would be drawn." *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 416. "Common sense and everyday experience suggest that, absent unusual circumstances, the bank on which a check is drawn is generally of little consequence to the payee and is a

matter left to the discretion of the drawer." *Id.* at 416–17. As such, this factor has no impact on the Court's analysis.

The leluv.com website and Kodi's sales to California consumers are likewise wholly irrelevant to the specific jurisdiction inquiry in this case. It is Civil Procedure 101 that specific jurisdiction over a defendant may be exercised only where the plaintiff's claims arise out of or result from the defendant's forum-related activities. *Haisten*, 784 F.2d at 1397. This is a straightforward breach of contract case. Whether Kodi sells adult products to California consumers is of no consequence to the instant matter.

Greystone nonetheless mounts a valiant effort to show that this case arises from Kodi's sales:

> Greystone provided the majority of "start-up" Fantasy's funding for the launching of its business, which is now operating and selling its products to California residents. . . . From the outset, it was clear that a portion of the monies generated from its sales operations Word of [*sic*] utilized to make payments the [*sic*] Greystone note and ultimately, generate sufficient income to retire the note in its entirety.

> Here, there is sufficient nexus since, quite simply, without the income generated in part from sales to California customers, the Fantasy defendants would be unable to make the payments under the note that they made from 2000 [*sic*] through 2014. Accordingly, Greystone has a significant interest in the ongoing success of the Fantasy defendants' business operations in California as well as elsewhere.

(Doc. No. 46 at 17–18.) The Court declines Greystone's invitation to extend the doctrine of specific jurisdiction to breach of contract claims where a party makes payments under the contract when such payments are derived from sales to consumers in the forum. Greystone's claim does not arise out of Kodi's sales to consumers; it arises out of Defendants' failure to fulfill their obligations under the note. The amended complaint acknowledges as much. (Doc. No. 26 at 1 ("This action arises out of [Defendants'] failure to repay a loan that it received from Greystone . . . .").) For this reason—in addition to the fact that imputing Kodi's contacts to Defendants is improper, *see supra* Discussion Section I—the Court finds Kodi's sales have no bearing on the specific jurisdiction inquiry. *See*

*also Williams*, 851 F.3d at 1024 (noting the Supreme Court abrogated the agency theory of piercing the corporate veil in both the general and specific jurisdiction context).

### III. *Leave to Amend*

Greystone asks, in the event of a dismissal, that it be granted leave to amend. (Doc. No. 46 at 20.) Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend should be "freely give[n] when justice so requires." However, courts can dismiss without leave to amend if "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency[.]" *Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007) (quoting *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988)).

Here, there appears to be no way Greystone can cure the jurisdictional deficiencies noted herein. Notwithstanding having had the benefit of the Court's prior order dismissing the complaint and jurisdictional discovery, Greystone was unable to come forward with any facts the Court had not already considered and rejected. This inability to make a prima facie case is readily apparent given that the discovery propounded and Greystone's opposition all involve a non-party's marketing and sales in California, despite making no effort to show that the non-party is either Defendant's alter ego and in light of the Supreme Court's clear abrogation of the agency theory of piercing the corporate veil. And, as explained, even if the Court considered those sales, the contacts are still insufficient. Based on the foregoing, the Court finds amendment would be futile. Accordingly, the Court **DENIES** Greystone's request for leave to amend.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' motion to dismiss for lack of personal jurisdiction and **DISMISSES** the amended complaint **WITH PREJUDICE**. (Doc. No. 28.) This case is now **CLOSED**.

To be clear, the Court's dismissal affects only Greystone's ability to pursue its claims in the Southern District of California. It appears that the District of Arizona has personal jurisdiction over Defendants and that Greystone can still timely refile its claims there regardless whether California or Arizona state law controls. Ariz. Rev. Stat. § 12-

548(A) (six-year limitations period for breach of contract claims); Cal. Civ. Proc. § 337 (four-year period).

**IT IS SO ORDERED.**

Dated: May 16, 2017

*/s/ Battaglia*
Hon. Anthony J. Battaglia
United States District Judge